Please step up and identify yourselves for the record. Good morning. For the Defendant Appellants, Robinette Valenti, Michael Reeses, R-E-S-E-S. Good morning, Your Honors. Michael Duffy on behalf of the Abilene Mount Hawley Insurance Company. Thank you. Please proceed. Good morning. May it please the Court, Counsel. Again, my name is Mike Reeses and I'm here today for the Appellants. This is an appeal from an order of the trial court granting summary judgment to Mount Hawley, denying our cross-motion for summary judgment. There are two issues on appeal. First... Let me ask you a question before you start here. The certificate of insurance here, was that issued by the insurance company? I believe that was issued by the insurance producer. By the producer? By the producer, yes. And did the insurance company have notice of that? There is nothing in the record to answer one way or another what the relationship, if any, was between the insurance producer and Mount Hawley. Mount Hawley never made it an issue. Was that producer an agent of the insurance company? We would take that position, but again, it was never pled. It was never the subject of the motions for summary judgment. Okay. First issue is whether any breach of a notice of occurrence provision by COBRA, the policyholder, deprived Robinett and Valenti of coverage. And if not, whether Valenti was an additional insured under the blanket form endorsement. We respectfully submit that COBRA's breach did not deprive Robinett and Valenti of coverage because only COBRA had the duty to give notice of an occurrence or claim. Further, Valenti qualified under the endorsement. If we are correct, the judgment below cannot stand, and we are entitled to judgment on appeal. First, the trial court found that COBRA's breach voided coverage for Robinett and Valenti. But the trial court confused duties owed only by COBRA as a named insured with those of the additional insured, Robinett and Valenti. Mount Holly clearly distinguished between the two in the conditions section of the policy. Under the policy, only you, quote, Y-O-U, close quote, that is COBRA, had the duty to give notice of an occurrence or claim. While all insurers, including Robinett and Valenti, my colleagues, had the duty to forward suit papers and cooperate in the defense. American National versus National Union, cited in our briefs, is directly on point. There is here the policy required that only the named insured give notice of an occurrence or claim. And the appellate court agreed that the additional insured could not have violated the notice provision. The trial court should have followed that decision here. Now to avoid that decision, Mount Holly relies on the separation of insureds clause to impute COBRA's breach to us. But this would make their rights to coverage depend on COBRA's action, something that is contrary to the innocent co-insured rule and the reasonable and ordinary expectations of insureds. If I can just briefly refer to the Micelli case, Justice Gariano made the point better than we can make it. It is unlikely that a reasonable person would agree to an insurance policy which makes recovery under the policy contingent on the actions of another. That's Mount Holly's argument in this case. Mount Holly would apply that clause without regard to the relationship that the parties have to each other under the policy and the law. Richard Bluecoats, a COBRA employee and the underlying plaintiff, could not have sued COBRA because of the exclusive remedy of the workers' compact. He can't sue his employer in a court of law for a tort. And if he had... Counsel, Mount Holly does not dispute the fact that the defendants did comply with Section 2C. Yes. And then so but then where is the law that says that if a named insured reaches its duty to notify under the policy, that that then bars coverage for additional insureds who have complied with their duties. Under the policy notice supervision. Where is that law? I didn't find it. I couldn't find it either, Your Honor. There is no law that would apply, would deny us coverage based on a notice provision that we didn't have to comply with. I mean that's the crazy thing about this case. It's why this case is a mismatch for the policy conditions. They're saying that COBRA has the duty to give notice even though COBRA never gets coverage. They can't get coverage because of the employee exclusion. When their employee sues them, they're not covered under their, the CGL policy. And that's true. They're sued directly. And that's true. If we sued them for contribution, there's still no coverage owed to COBRA. So what they're saying is the duty to give notice is on the party that doesn't get coverage. Whereas, we are denied coverage even though we didn't have any duty to give notice in the first place. And if that's not enough, they're saying that the separation of insureds clause imputes COBRA's inaction to us after a loss, even though the purpose of the clause is not to narrow coverage, it's to broaden coverage. And to go to your question, Justice Hall, I can't ask opposing counsel this question, but you can. And the question I would ask that you ask him is when he has a chance to step up here is, why would you distinguish in your policy between insureds in the notice condition of the policy if you're then going to use the separation of insureds clause to make it a joint obligation? If you want to make it a joint obligation, just say the insured has a duty to give notice of an occurrence or claim. If it's the insured's obligation, then it's our obligation as much as anybody's obligation. That's not how they wrote the policy. They wrote the policy to distinguish between the two. At the very least, at the very least, we would suggest that the separation of insureds clause is ambiguous as applied. And it conflicts with the notice provisions. Because remember that although we don't have the duty to give notice of an occurrence or claim, we do have the duty to forward suit papers and to cooperate in defense, and we met those duties. In this case, would the failure to give notice of prejudice be insured? Well, Judge Arnold simply assumed that because COBRA had not given notice for what was an unreasonable period of time, like 20 months, that was sufficient. So she never actually reached the question of whether there was prejudice to anybody. And to be honest, the way this was teed up, we wanted to present the issue for the court as cleanly as possible. So the way it was developed was they make a motion for summary judgment, and they say, okay, COBRA breached because they didn't give notice. We didn't know about it for 21 months. Okay? Our first notice is when the lawsuit comes in. When we timely tender the claim, our response is we don't have to be the ones giving notice because the notice conditions don't apply to us. So again, that issue was never really developed on summary judgment. And I think for purposes of what you want to assume in this decision, I think you have to assume that COBRA made a material breach. I'm not here to dirty the record up with regard to what COBRA did or didn't do. I don't represent COBRA. But what I do want to say is that if you have this condition provision that says that only COBRA has a duty to give notice of an occurrence or claim, I think that that would conflict with whatever they're trying to make a joint obligation under the separation of insurance clause. And then I think the rule that applies is that if the policy contains either conflicting or inconsistent provisions, the clause that affords the greater benefit or coverage will prevail for us. Of course, your opponent does argue that it's only one policy. And, you know, if it affects COBRA, it would affect all of the additional insurers as well. That's not how they wrote it. But that's not how they wrote it in the conditions. Period. That's not how they wrote it in the conditions section. How they wrote it in the conditions section was that certain duties are joint duties, right? The duty to forward suit papers, the duty to cooperate in defense, and some duties are individual duties. The duty to give notice of an occurrence or claim is a separate undertaking that only COBRA holds. And there's nothing in the policy that says that if they breach, we lose coverage, even though we complied with everything that we had to comply with. In determining the reasonableness of Motwally's interpretation, remember that additional insurers like Robinette or Valenti don't necessarily know of an occurrence involving an injury to the named insurance employee at a work site before they are served with suit papers. And that's exactly what happens here. The conditions section of the policy recognizes that additional insurers have more limited rights to coverage. And because they have more limited rights to coverage, they're not in a position to know and cannot be expected to know of every occurrence or claim giving rise to a duty to give notice. Motwally does not dispute, it's never been disputed, that we complied with the duties that were assigned to us expressly. Unlike the additional insurer in American National versus National Union, which breached the separate duty to give notice of a lawsuit and forward suit papers, we complied with our duties by forwarding suit papers as soon as we were served. Counsel, what about the opponent's argument that it has no duty to indemnify Valenti? All right. Turning to that, I think the question there is whether Valenti qualifies as an additional insurer. And here I would make a couple of points. The endorsement provides that anyone was insured, quote, where required by written contract. Those are the key words. Where required by written contract. Now, the trial court said, interpreted the endorsement to mean, that the written contract has to specifically identify Valenti. And we would agree that the master subcontract between Cobra and Robinette did not identify Valenti. Not an issue. However, the way the agreement was drafted and in the course of the party's dealings, the contract said that Cobra would get insurance for Robinette and other parties as reasonably required because this is on a project-by-project basis. And we believe the trial court should have construed the various project documents together as forming a written contract to insure Valenti for this particular project. Now, what would that written contract consist of? Okay. First, it's the project work order for this particular project. One. Two, the master agreement because it incorporates it. Three, the insurance requirements because they're incorporated by the master agreement. Four, there's a faxed request to add Valenti to the policy. That's the fourth document to the written contract. And five, we have an insurance certificate. Justice Gordon, going back to your question about who issued it, well, we have an insurance certificate that's issued in response with Valenti named as an additional insurer. And there's no question about whether or not that was, you know, done with authority. The legal principle, the legal principle that we believe should have applied is that different writings that are executed as part of the same transaction are to be read together as constituting a single contract. COBRA did not have to contract directly with or identify Valenti because the master agreement allowed COBRA to supply the names to be included on a per-project basis, and that was done here. Mindful that it is a privilege, not a right, to address the Court. We are grateful to do so this morning, and for all the reasons set forth in the briefs, we ask you to reverse. I'd like to reserve two minutes for rebuttal, if I could. Thank you. Thank you, Counsel. Mr. Duff? Good morning, Your Honors. Michael Duffy upon behalf of Mount Holly. May it please the Court, Mr. Reeses. Mr. Duff, let me ask you this. How important in the insurance policy is the definition of insured in this case? In terms of – I'm not sure I grasped your question. Sorry. Is the definition of insured in this case important? Well, it's relevant insofar as it discusses, as respects Valenti, certainly, as to whether or not they qualify as an insured under the policy. Certainly, that is important. They didn't? No, they didn't. Why is that? Because there's no written agreement identifying Valenti as an additional insured – as being required to be asked as an additional insured under our policy. And going to your point – Well, what about that certificate of insured? Sorry? What about the certificate of insured? Well, that's exactly what I was going to get to. Please. You know, Mr. Reeses had suggested that we don't know who issued the certificate of insurance, whether or not it was Mount Holly's agent. It's clear from the record that it's not Mount Holly's agent. Okay? This is the insurance broker who issued a certificate after being asked by their own client to issue it. It is not Mount Holly's agent. No representation on that certificate is attributable to Mount Holly. There's nothing in the record to suggest that that agent's representations with respect to that issue are binding on Mount Holly. And, in fact, we, as Mount Holly, identified them as the insurance agent in the moving papers in this case that was not disputed at all by either Robinette or Valenti. And, in fact, in their own brief on this appeal, they identify the person who issued that certificate as the agent of the insured. Does the certificate of insurance have Mount Holly's name on it as a form that Mount Holly uses? No. It's a fairly standard kind of accord form certificate of insurance, in my recollection. It is traditionally used in the insurance industry by insurance brokers as, quote, unquote, evidence of insurance. It identifies by typewritten, you know, filling in the boxes. They identify policies and such. But there are disclaimers on the face of all of those certificates that state that you can't rely on anything essentially being put here with respect to the coverage provided by the policy. You have to go to the policy. What about the issue that since this is an ongoing project, okay, so it's implied and it's inferred that since they had to get additional parties to work on the project that they would be covered under the policy based on the language in the policy? Well, this is not just one project. These people have a relationship, I think, that goes on on many projects. But in the construction industry, people get written documents saying, add these people. We need these people. This is a new project. I need this developer added. There's nothing in the record to suggest that. And so, you know, you can try to daisy chain these documents together, but it doesn't hold water. Are you saying in every instance they always go back to the original insurers, insure in order to get additional insured for each and every project? Yes, they have to identify them in writing. Otherwise, the requirement of a written agreement is fallacious. It's ridiculous. It doesn't even exist. If you can sit there and say, I can add whoever I want just by telling you about it, then the concept and the restriction of a written agreement requiring somebody before the loss to have somebody identified in writing just doesn't exist. Hypothetically, construction of a high-rise building, and you're saying that the general contractor would have to get documents to the insurance company identifying each phase as it goes along who's going to be working on a project and that they should be included as additional insurers. Well, typically, the general contractor will enter into a subcontract with a subcontractor like COBRA. Right. So then there will be a request. COBRA, I need these people added on this job or for this phase or whatever they're asking them to do. I mean, there is a separate undertaking being going on here with respect to each phase. There's a new scope of work. There's new people involved in every other part of the phase. If they want those people added, these people know how to get it done. They just put it in writing, and that was never done in this case. Where is that in the record? Is there an additional premium charge? I don't know. I don't know. But typically, there is a premium charge based on, and there are also audits that go back. You've got to understand, too, is this particular policy is a surplus lines policy. Where in the record is that by each phase of this particular project, they had to provide you with the names or identities of the additional? Well, there has to be a written agreement identifying this person as needed to be added, and that does not exist in this case. It is nowhere in the record. The only thing that identifies them as an additional insured is a certificate of insurance, which cannot create coverage as a matter of law. The case law in Illinois on that point is legion. So that's the only written identification of Valenti in the record is that certificate, and Judge Arnold was absolutely correct to ignore that as a basis to create additional insured status for Valenti under the Mount Holly policy, which, as I was about to say, is a surplus lines contract. This is not the surplus lines insurance industry in this state and other states. It involves the riskier risks, the more problematic insureds because you cannot normally get insurance through the traditional market. So, Counsel, you've got the language of Schedule B that says that reflects the party's intention that in addition to Robinette, Cobra was required to obtain additional insurance coverage. You've got a work order that was referred back to by the party's agreement, and you've got a certificate of insurance. All these documents together, don't they indicate that that's sufficient to include Robinette and Valenti as additional insured? There's no dispute that Robinette would be considered an additional insured, okay, because there's actually a written agreement asking that Robinette be added. It doesn't exist for Valenti at all. The only written document that exists that has Valenti on it is the certificate of insurance, which cannot create the coverage, which is why Judge Arnold ignored it because it was a document created by Cobra's own insurance broker and not the contracting party's. So it is not a document that can be considered in this way. Well, didn't Judge Arnold decide this case had failure to notify? Yes, that was the principal basis, but she certainly did hold that Valenti was not an insured as well. But I'm more than happy and would like to address the notice issue as well. It is undisputed in this case that Cobra breached the notice condition of the policy. They are the named insured. They breached the notice of occurrence provision of the policy, a duty that was assigned specifically to Cobra under the contract. Does the insurance company have to prove prejudice for a violation? No. Illinois law, I think, is plain on that issue. I think we did suffer prejudice here. That was not developed in the record because it didn't need to be. However, it's interesting because both in oral argument and in their reply brief, for the first time, Robinette and Valenti now suggest that perhaps Cobra didn't breach the notice condition. Perhaps they didn't have a duty to notify us of the occurrence because the occurrence involved their employee, and there's an employee exclusion in the Mount Holly policy, which would preclude coverage for a direct action by that individual against Cobra. The problem is that this was never raised in the trial court in any of their papers. They conceded in the trial court that Cobra violated the notice condition of the policy. Their motion for judgment on the pleadings admits the allegations of our complaint in which we allege that Cobra had, in fact, breached the notice of occurrence provision in the policy. So how does that breach keep the additional insurers who have done what they were supposed to do from being covered under the policy that breached by Cobra? I mean, this kind of gets into the question Mr. Reese has asked you to ask me. No, that was the question that I raised, and now I'm raising it to you. It's similar, but it's similar. I mean, the issue here is we're not contending that they did not, that they breached the notice condition with respect to the forwarding of papers, legal papers here, when they received them. That's never been an issue in the case, okay? What is at issue is the duty that was assigned to the named insured, which was breached, okay, and that breach by operation of the terms of the policy applies to every additional insured or insured under that policy. It doesn't say that. It says it in the separation of insureds clause. Each contract, this is a contract case, so each contract is determined by the terms of the contract that are at issue. The terms of our contract specifically state that certain rights and duties are assigned to COBRA, and if they breach those rights and duties, then that applies to everyone. There can be no – Do they have to have notice and knowledge to breach? I'm sorry? Do they have to have notice and knowledge to breach? Yes, they do, but they did. There's never been a dispute that COBRA breached the notice of occurrence provision, and let me just say one thing. One thing Mr. Reese has left out when he discussed the potential of a claim arising out of this accident against COBRA is the potential of an indemnity action, which would be brought by Robinette or somebody else potentially, pursuant to the contracts that we know are written here, and I'll tell you now, I've been practicing law in this state for 25 years and done a lot of coverage work, and I think I've seen more third-party actions tendered to employers of the plaintiff for coverage under a GL policy than I have hairs on my head. It happens all the time, and Judge Arnold realized that. They realized it, which is why they never raised this argument in the court, in the trial court. This argument is waived at best, but even if you took it on its substance, it's fallacious. They breached the notice condition of the policy. The separation of insureds clause in the policy specifically states that there are certain duties that are assigned to the named insured, and that, in conjunction with the action against company clause of the policy, which requires every condition of the policy to be met before coverage is afforded, determines that these people, these additional insureds, are bound by the breach. Now, let me just... I have a question. Oh, go ahead. What is the language of the policy, given the fact that you indicated this is a contract? Do the additional insurers know that if, in fact, there is a breach by the name insured, that then, therefore, that duty is... Binds them. Binds them. Well, they certainly could have gotten a copy of the policy if they wanted. They knew where we were. If they wanted to get it, they could have asked for it. Just because they didn't read it doesn't mean that it doesn't bind them, and I think Illinois law is clear on that. But this kind of gets to the argument that they make in response, that how could anyone anticipate that you would have to rely upon the actions of a named insured or some other party to secure coverage for you under an insurance policy? And when I read that, I really scratched my head because that is precisely what they did in this case from its genesis. They asked a third party to go and procure insurance for them to secure those benefits. That's what this is all about. They've already asked COBRA to go and get the coverage for them. So they're already relying on COBRA to make sure that they're covered. That's what they asked that they had done, that they do in the contract. It is similar to the Barrington School case insofar as sometimes there are relationships between insureds which create the reasonableness that they would expect that there are certain things that that third party that I'm asking to go get coverage for me has to do, including paying premium, including any other number of things. So I submit to you that the genesis of their relationship suggests that it is reasonable that they rely upon someone else's activity to secure coverage for them. The grant of coverage in this case is entirely predicated for the additional insureds, is entirely predicated on their relationship with that named insured. Everything is derivative of that relationship. So for them to say that something that COBRA did or didn't do, how would we possibly know, why would we rely upon them to secure the coverage for us, just belies the relationship. So it's your position here, A, there was no coverage, and B, there was a violation of the policy provision, the notice of the policy provision that there was coverage. Well, as respects of Valenti, there is no coverage. Yes, that is our position. But we, it's our position that there is a violation of the notice condition that precludes coverage, even if they are insured, because there would be an additional insured that would be bound by the actions of COBRA, the named insured in this case. There's one other point I wanted to make. I'm sorry, Your Honors. Again, no, I think I covered this. Again, the issue of whether or not COBRA could have had some liability with respect to this action, and that that couldn't have happened because they're an employee. They certainly could have been third-partied, and they certainly could have tendered it to us, particularly if they get sued in indemnity. I think that the relationship of why would we set up our notice condition requiring the named insured to give us notice of an occurrence as opposed to an additional insured, and yet bind the additional insured based on that notice? Well, I think it's pretty straightforward. That's who our contractual relationship is with. We have a direct relationship with our named insured. We don't know, at the time of an occurrence, we don't know who else necessarily might be an insured under the policy. And so we rely on our own named insured who's involved in that occurrence to give notice on behalf of everyone. Because, frankly, many times, and Mr. Reiss has, I think, admitted this, additional insureds don't know necessarily right away if there has been an accident arising out of the subcontractor's work. But you know what? The subcontractor named insured under our policy does, and we expect them to give us notice of an occurrence so that we can go out and investigate that and determine, perhaps, if there are additional insureds involved and what the potential exposure of our own named insured is with respect to that occurrence. And so that is the reason why. Thank you. Thank you, Your Honor. Thank you. We should be briefing about them. Okay. So his answer is, oh, well, we have a contractual relationship with our named insured, so that's why we look only to our named insured to give us notice of the occurrence or claim. But the same policy says that all insureds have to forward suit papers. Now, if you want to use the contractual relationship as the principle here that you are upholding, why do they write the policy that requires that we, as additional insureds, also have to give notice when we're sued? The problem is they're making a distinction between notice of occurrence and other types of notice, you know, forward suit papers, cooperating the defense, and there's no way you can give a principled explanation for why you're going to distinguish between insureds with respect to this condition that applies only to COBRA and not to us. Justice Gordon, you asked the question, is the definition of insured important in this case? It's critical. The policy distinguishes between you, meaning the named insured, and all other insureds. Only you, COBRA, has the duty that was breached here. We are not you. We are not the named insured. We didn't breach. Mount Hawley suggests that, well, maybe we're asking for something greater than what COBRA would get. That's not true. We're only claiming rights that are co-extensive with our duties. If we don't know the duty, as Mount Hawley admits, our rights do not depend on COBRA's actions after the loss. We're relying on the innocent co-insured rule. I don't want to say any more about that. Just briefly with regard to whether Valencia is an additional insured. If I understand what counsel is saying, he's saying that if you have 20 projects, you need 20 separate contracts. That's not the way of the real world. That's not the way business is done. This was a master agreement. Robinette is supposed to be covered, and other parties on a project-per-project basis, as Robinette requires. We have a fax, okay? We don't just have something oral. We have a fax in addition to the other writings. You put all those writings together, whether it's a daisy chain or not, it doesn't really matter because we have a legal principle that all parts of the daisy chain get to be construed as part of the same contract. If you put everything together, the work order, the insurance requirements, the insurance schedule, the fax, and the certificate, you have a written contract to insure Valencia. For all the reasons, we ask you to reverse and grant judgment on appeal. Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.